UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| HOLLIE TOUPS, <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE INC. and WWW.MYEX.COM, <br><br> Defendants. | Case No. 1:14-cv-00127-MAC |

# GOOGLE INC.'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant Google Inc. ("Google") respectfully submits this motion to dismiss Plaintiff's First Amended Complaint under Fed. R. Civ. P. 12(b)(6).

This is the second attempt that Plaintiff Hollie Toups ("Plaintiff") has made to state a claim for copyright infringement against Google. After Google moved to dismiss Plaintiff's original claim, she filed an amended complaint. While this complaint makes a handful of new allegations about the works at issue, it remains wholly deficient. The Amended Complaint provides no meaningful information about the nature of Google's alleged wrongdoing, including how or where Google supposedly infringed Plaintiff's copyrights. And insofar as Plaintiff's copyright claim is at all discernible, it fails as a matter of law. An Internet search engine like Google does not infringe simply by making copyrighted material accessible to its users, whether by providing "links" to websites where that material is located or by presenting thumbnail images identifying the content included in a user's search results. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007)

("*Amazon*") (rejecting identical claims against Google). Indeed, it appears that Plaintiff's real dispute is not with Google, but instead with www.myex.com, the website that allegedly solicited the photographs accused of infringement.

Plaintiff also tries to assert a new claim against Google for invasion of privacy. But the Amended Complaint offers nothing more than a formulaic recitation of the elements of Plaintiff's cause of action—precisely what the Supreme Court has said is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff's state-law claim is also barred by federal law. Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1) ("CDA"), precludes any attempt to treat an online service provider like Google as the "publisher or speaker" of information supplied by someone else. That is what Plaintiff seeks to do here. Earlier this year, the Texas Court of Appeals applied the CDA to reject a virtually identical claim that Plaintiff brought against another online service. *GoDaddy.com, LLC v. Toups*, 429 S.W.3d 752 (Tex. Ct. App. 2014). This Court should do likewise.

## STATEMENT OF ISSUES

1. Should Plaintiff's copyright claim be dismissed because Plaintiff alleges insufficient factual information about Google's alleged infringement?

2. Insofar as Plaintiff's copyright claim is based on Google making images on other websites accessible through its search engine, should that claim be dismissed because the alleged conduct does not constitute infringement as a matter of law?

3. Can Plaintiff state an invasion of privacy claim against Google simply by reciting the elements of the state-law cause of action without providing any supporting factual allegations?

4. Is Plaintiff's invasion of privacy claim, which seeks to treat Google as the "publisher or speaker" of information provided by someone else, barred by Section 230(c)(1) of the CDA?

## BACKGROUND

Google is a leading online service provider. Its many products and services include a well-known Internet search engine that allows billions of users around the world to search for online content and receive search results that respond to their queries. Google's search results include "links" that take users to the underlying Internet sites (usually maintained by third parties) where the responsive material can be found. *See generally Amazon*, 508 F.3d at 1155-56.

On March 6, 2014, Plaintiff filed this action against Google, along with another popular Internet search engine (Yahoo!, Inc.) and an unrelated website called www.myex.com (MyEx). Plaintiff avers that she was the victim of certain revenge-porn websites, including www.texxxan.com and www.texxxans.com. Am. Cplt. ¶ 5. Plaintiff sued those two websites in a separate case in state court and has apparently secured an injunction shutting them down. *Id*. Neither site is a party to this case, and neither is alleged to have any relationship with Google.[1] Yahoo!, Inc. was voluntarily dismissed by Plaintiff on July 15, 2014. Plaintiff has not yet served MyEx.

Plaintiff originally sued Google solely for copyright infringement. Google moved to dismiss on the grounds that Plaintiff had failed to provide sufficient information about her claim and because the limited allegations that she had made indicated that the claim failed as a matter of law. Rather than respond to Google's motion, Plaintiff filed an amended complaint that adds a handful of additional (though still deficient) allegations about the works at issue. Am. Cplt. ¶¶ 6-7. Plaintiff now alleges that she has copyright registrations for 10 photographs, which were posted by unknown persons on "revenge porn" websites. *Id*. ¶ 6.

---

[1] In the state-court case, Plaintiff also asserted various tort claims against GoDaddy.com, which hosted the offending websites. As discussed below, all of those claims were correctly dismissed under the CDA. *GoDaddy*, 429 S.W.3d at 762.

Plaintiff claims that these images can be found through Google's search engine, though the Amended Complaint is vague about whether it is alleging that Google actually "host[s]" the photographs at issue or whether it only "make[s] accessible" those images through "links" to other websites. *Id.* Like its predecessor, the new complaint offers no information about where on Google's service the allegedly infringing images or links appeared. While offering few details, Plaintiff also alleges that she submitted requests to Google to have the material at issue removed. *Id.* Plaintiff admits that Google did so for nearly all of the images, but she asserts that Google has not taken down "one last remaining copyrighted image from its search/images function." *Id.* at ¶ 7. Based on that single image, Plaintiff now seeks damages ($30,000 per day, a figure not allowed by the Copyright Act, 17 U.S.C. § 504(c)) and an injunction.[2]

In addition to her copyright claim, Plaintiff now purports to assert a claim under Texas law for invasion of privacy. *Id.* ¶ 12. But Plaintiff offers no basis for overcoming Google's CDA immunity against such a claim. Beyond that, Plaintiff's attempt to plead an invasion of privacy claim does nothing more than recite the elements of that claim. The Amended Complaint does not allege any facts—much less any plausible ones—supporting those threadbare recitations. *Id.*

## ARGUMENT

Both of the claims asserted in the Amended Complaint are insufficiently pleaded and fail as a matter of law. To the extent Plaintiff's copyright claim is

---

[2] After filing its motion to dismiss, Google has provided detailed instructions to Plaintiff's counsel about how to submit a proper request under the Digital Millennium Copyright Act to remove any links to allegedly infringing images. *See* 17 U.S.C. §§ 512(c)(3), (d)(3). Plaintiff's counsel has refused to use those procedures, notwithstanding Google's attempts to provide step-by-step instructions on the process for submitting a takedown request. Plaintiff's counsel has also ignored multiple requests from Google that counsel provide information that would identify the "one last remaining" image at issue.

discernible, it does not state a viable theory of infringement. The invasion of privacy claim is supported by no factual allegations and barred by the CDA.

### I. Plaintiff's Copyright Infringement Claim Fails Because It Is Still Unsupported By Sufficient Factual Allegations And Because Providing Links To Allegedly Infringing Images Is Not Infringement

#### A. Plaintiff Still Fails To Allege Sufficient Facts To Support Her Infringement Claim

Google explained in its original motion to dismiss that "a plaintiff suing for copyright infringement may not rest on bare-bones allegations that infringement occurred." *Sharp v. Patterson*, No. 03 Civ. 8772 (GEL), 2004 U.S. Dist. LEXIS 22311, at *42 (S.D.N.Y. Nov. 3, 2004). Like its predecessor, the Amended Complaint suffers from that basic defect. Plaintiff offers no meaningful allegations to describe "by what acts during what time" Google supposedly infringed Plaintiff's copyright. *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36 (S.D.N.Y. 1992).

Here is the sum total of what the Amended Complaint has to say about the nature of Google's alleged infringement: "Google continu[es] to host or make accessible through its search/images function, [Plaintiff's] copyrighted intimate images." Am. Cplt. ¶ 6. This "claim lacks sufficient detail as to the infringing acts alleged." *Plunket v. Estate of Conan Doyle*, No. 99 Civ. 11006 (KMW), 2001 U.S. Dist. LEXIS 2001, at *16 (S.D.N.Y. Feb. 22, 2001). Plaintiff says there is "one last remaining" image that remains in Google's "search/images function" (Am. Cplt. ¶ 7), but does not identify *what* that image even was, *where* on Google's service it appeared, *how* it was displayed, or *through what acts* Google caused it to appear.

Without such basic factual allegations, there can be no viable infringement claim. Courts have repeatedly rejected similarly deficient copyright complaints. *See, e.g.*, *Terraspan, LLC v. Rave, LLC*, No. 3:12-CV-0816-K, 2012 U.S. Dist. LEXIS 174672, at *15-16 (N.D. Tex. Dec. 10, 2012) ("bare assertions" that defendant

"knowingly and willingly directly copied [plaintiff's] subject works and did so for the specific purposes of infringing [plaintiff's] copyrights, and reproducing, copying and distributing illegal unauthorized copies of the subject works" insufficient to state an infringement claim) (internal quotation marks and citation omitted); *Ritani, LLC v. Aghjayan*, 880 F. Supp. 2d 425, 441 (S.D.N.Y. 2012) (dismissing copyright claim where "the requisite specifications as to what acts and what time the specifically listed copyrights were infringed has still not been met"); *Young-Wolff v. McGraw-Hill Cos.*, No. 13-CV-4372 (KMW) (JCF), 2014 U.S. Dist. LEXIS 12233, at *15 (S.D.N.Y. Jan. 31, 2014) (requiring plaintiff to "specify … the dates or periods of time in which Defendant is alleged to have infringed Plaintiff's photographs"). The missing allegations mean that Google has not been put on notice about what it is supposed to have done wrong—and thus cannot meaningfully defend itself.

  B. Google Does Not Infringe Copyright By Providing Access to Images Through Its Search Engine

While Plaintiff's copyright claim could be dismissed on this basis alone, any dismissal should be with prejudice because, to the extent any claim can be discerned from the Amended Complaint, it is not legally viable. Plaintiff's theory appears to be that Google has engaged in direct infringement by making Plaintiff's photograph(s) accessible via its search engine. As noted above, Plaintiff's counsel has ignored Google's repeated inquiries about what images remain accessible. But even if there were some clearer indication of what images were actually at issue, Plaintiff does not offer a valid theory of copyright infringement.

In *Perfect 10 v. Amazon, supra*, the Ninth Circuit rejected an identical claim against Google. That case involved "a copyright owner's efforts to stop an Internet search engine from facilitating access to infringing images." 508 F.3d at 1154. The plaintiff (Perfect 10) published a magazine that included copyrighted images. As the court explained:

> Some website publishers republish Perfect 10's images on the Internet without authorization. Once this occurs, Google's search engine may automatically index the webpages containing these images and provide thumbnail versions of images in response to user inquiries. When a user clicks on the thumbnail image returned by Google's search engine, the user's browser accesses the third-party webpage and in-line links to the full-sized infringing image stored on the website publisher's computer.

*Id.* at 1157. Perfect 10 claimed that by linking to the full-size images, Google infringed Perfect 10's exclusive right to display and distribute its copyrighted photographs. The Ninth Circuit held otherwise.

The court of appeals began by affirming that "the owner of a computer that does not store and serve the electronic information to a user is not displaying that information, even if such owner in-line links to or frames the electronic information." *Id.* at 1159; *see also Perfect 10, Inc. v. Google Inc.*, 416 F. Supp. 2d 828, 843-44 (C.D. Cal. 2006) (further explaining this "server test"). Applying that test, the court explained that full-size versions of the plaintiff's copyrighted images are not displayed from Google's computers. "Instead of communicating a copy of the image, Google provides HTML instructions that direct a user's browser to a website publisher's computer that stores the full-size photographic image." *Amazon*, 508 F.3d at 1161. Accordingly, even if Google's links may "facilitate the user's access to infringing images," that "does not constitute direct infringement of the copyright owner's display rights." *Id.*

Applying similar logic, the Ninth Circuit rejected Perfect 10's claim that its distribution right was infringed by Google's links. As the court explained:

> Google's search engine communicates HTML instructions that tell a user's browser where to find full-size images on a website publisher's computer, but Google does not itself distribute copies of the infringing photographs. It is the website publisher's computer that distributes copies of the images by transmitting the photographic image electronically to the user's computer.

*Id.* at 1162. The *Amazon* decision confirms that Google cannot be held liable for copyright infringement based on the way its image-search engine provides links to

7

photographs available for viewing on third-party websites. *See also, e.g.*, *Flava Works, Inc. v. Gunter*, 689 F.3d 754, 758 (7th Cir. 2012) (service that allowed users to link to copyrighted videos on other websites "is not an infringer, at least in the form of copying or distributing copies of copyrighted work"); *Leveyfilm, Inc. v. Fox Sports Interactive Media, LLC*, No. 13 C 4664, 2014 U.S. Dist. LEXIS 92809, at *13-18 (N.D. Ill. July 8, 2014) (website that offered links to allegedly infringing photograph "cannot be liable under the Copyright Act").

These holdings apply fully here. Insofar as Plaintiff is claiming that Google's links infringe her rights under the Copyright Act, that claim fails as a matter of law. Plaintiff does not allege that Google stores and "show[s]" full-size copies of the photographs at issue to users. 17 U.S.C. § 101 (defining "display"). And, as the Ninth Circuit held, Google does not "display a copy of full-size infringing photographic images for purposes of the Copyright Act when Google frames in-line linked images that appear on a user's computer screen." *Amazon*, 508 F.3d at 1160. Any distribution claim founders for much the same reasons. Plaintiff makes no allegation that Google has made copies of her photograph available "to the public by sale or other transfer of ownership, or by rental, lease, or lending." 17 U.S.C. § 106(3) (defining the public-distribution right). As in *Amazon*, "Google does not own a collection of [plaintiff's] full-size images and does not communicate these images to the computers of people using Google's search engine." 508 F.3d at 1162.

While Plaintiff's claim appears to be based primarily on Google's links (Am. Cplt. ¶ 8), the Amended Complaint also includes an isolated reference to Google "host[ing]" images (*id*. ¶ 6). Plaintiff does not elaborate, but she may be trying to suggest that Google's display of scaled-down "thumbnail" images to show users what photos are responsive to their search queries somehow violates her copyright. This is an equally invalid copyright claim; the law is clear such thumbnails are fair use. "Under the fair-use doctrine," as the Second Circuit recently observed, an

"internet search engine can display low-resolution versions of copyrighted images in order to direct the user to the website where the original could be found." *Authors Guild, Inc. v. HathiTrust*, __ F.3d __, 2014 U.S. App. LEXIS 10803, at *17 (2d Cir. June 10, 2014). This issue was resolved in *Amazon* and in an earlier case, *Kelly v. Arriba Soft Corp.*, 336 F.3d 811 (9th Cir. 2003).

The Ninth Circuit held in *Amazon* held that "Google's use of thumbnails is highly transformative," observing that "a search engine puts images in a different context so that they are transformed into a new creation." *Amazon*, 508 F.3d at 1165 (internal quotation marks and citation omitted). That is so even if the use is of the "entire" image and even if it has a "commercial nature." *Id*. at 1165-66. The court explained:

> In this case, Google has put Perfect 10's thumbnail images (along with millions of other thumbnail images) to a use fundamentally different than the use intended by Perfect 10. In doing so, Google has provided a significant benefit to the public. Weighing this significant transformative use against the unproven use of Google's thumbnails for cell phone downloads, and considering the other fair use factors, all in light of the purpose of copyright, we conclude that Google's use of Perfect 10's thumbnails is a fair use.

*Id*. at 1168. This result followed directly from the Ninth Circuit's earlier decision in *Kelly*, which similarly held that returning search results in the form of thumbnail images was a fair use. 336 F.3d at 818-22.

The same is true here. Whatever the original purpose of the Plaintiff's photographs, Google's search engine "transforms the image into a pointer directing a user to a source of information." *Amazon*, 508 F.3d at 1165; *see also Kelly*, 336 F.3d at 818 ("Arriba's search engine functions as a tool to help index and improve access to images on the internet and their related web sites."). Doing so had no conceivable effect on the market for Plaintiff's images. It is clearly a fair use. *Accord Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687 (7th Cir. 2012) (affirming dismissal of copyright claim at the pleading stage based on fair use).

Plaintiff tries to suggest that a fair use defense is not available here because Google's alleged use does not fall into one of the purposes listed in the preamble of § 107 of the Copyright Act. *See* Am. Cplt. ¶ 9 ("under the Fair Use Doctrine a copyrighted work is not subject to a copyright infringement lawsuit only if its use is for such things as teaching, scholarship, research or news reporting"). This is plainly wrong. The Supreme Court has explained that the statute "employs the terms 'including' and 'such as' in the preamble paragraph to indicate the 'illustrative and not limitative' function of the examples given, which thus provide only general guidance about the sorts of copying that courts and Congress most commonly had found to be fair uses." *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577-78 (1994) (quoting 17 U.S.C. § 101 ("The terms 'including' and 'such as' are illustrative and not limitative.")). As *Amazon*, *Kelly*, and countless other cases demonstrate, a use can be a fair one even if not for one of the specific purposes mentioned in § 107. *See also, e.g.*, *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 447-50 (1984) (fair use for viewers to record broadcast television shows to view them at a later time).

For these reasons, Plaintiff's effort to assert an infringement claim based on Google's linking to, or including "thumbnail" versions of, her images in its search results fails as a matter of law. Google does not violate the Copyright Act by making photographs accessible through its search engine.[3]

---

[3] While outside the scope of this motion, the "safe-harbor" provision of the Digital Millennium Copyright Act, 17 U.S.C. § 512 *et seq.* ("DMCA") also protects search engines like Google from copyright infringement claims, including those based on "referring or linking users to an online location containing infringing material or infringing activity" (*id.*, § 512(d)). *See Amazon*, 508 F.3d at 1158. Should this case proceed, Google expects to show that the DMCA applies to this case and provides an additional basis for rejecting Plaintiff's claims.

### II. Plaintiff's Invasion of Privacy Claim Is Supported By No Plausible Factual Allegations And Is Barred By The CDA

Going beyond copyright infringement, the Amended Complaint adds a new claim against Google for invasion of privacy under Texas law. Am. Cplt. ¶ 12. This claim fails. Plaintiff's allegations are merely a formulaic recitation of the elements of the cause of action. Beyond that, any invasion of privacy claim against Google is barred by Section 230 of the CDA.

#### A. Plaintiff's Allegations Are Too "Threadbare" To Satisfy Rule 8

To withstand a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This requires more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

Plaintiff's invasion of privacy claim suffers from precisely this deficiency. Plaintiff offers no factual allegations to support that claim. Instead, the Amended Complaint simply recites the four elements that Plaintiff claims are required by Texas law. *See* Am. Cplt. ¶ 12. Plaintiff does not explain how Google supposedly "appropriated" her likeness "for the value associated with those images," nor does she provide any factual allegations indicating what "benefit" Google received from doing so or what "injury" Plaintiff suffered as a result of Google's actions. *Id.* "These bare assertions … amount to nothing more than a 'formulaic recitation of the elements'" of an invasion of privacy claim. *Iqbal*, 556 U.S. at 681 (quoting Twombly, 550 U.S. at 555). "As such, the allegations are conclusory and not entitled to be assumed true." *Id.* This "is exactly the sort of 'threadbare recital of a cause of action'

11

that cannot survive [a] motion to dismiss." *Garcia v. Jenkins Babb, L.L.P.*, No. 13-10886, 2014 U.S. App. LEXIS 9915, at *5-6 (5th Cir. May 29, 2014) (quoting *Iqbal*, 556 U.S. at 678).

      B.      Plaintiff's Invasion of Privacy Claim Is Barred By The CDA

Plaintiff should not be given another chance to plead her invasion of privacy claim because that claim is clearly barred by the CDA.

Section 230(c)(1) of the CDA provides: "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). This provision

> creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service. Specifically, § 230 precludes courts from entertaining claims that would place a computer service provider in a publisher's role. Thus, lawsuits seeking to hold a service provider liable for its exercise of a publisher's traditional editorial functions — such as deciding whether to publish, withdraw, postpone or alter content — are barred.

*Zeran v. Am. Online, Inc.*, 129 F.3d 327, 330 (4th Cir. 1997); *see also Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (explaining that "Congress provided broad immunity under the CDA to Web-based service providers for all claims stemming from their publication of information created by third parties"). The CDA applies to a wide range of tort claims, including invasion of privacy claims. *See, e.g.*, *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119 (9th Cir. 2003); *Parker v. Google Inc.*, 422 F. Supp. 2d 492 (E.D. Pa. 2006), *aff'd*, 242 Fed. Appx. 833 (3d Cir. 2007).

This case presents a clear-cut case for CDA immunity. Indeed, very recently, the Texas Court of Appeals relied on the CDA in dismissing a nearly identical claim brought by Ms. Toups against another online service. *See GoDaddy.com v. Toups*, *supra*. In that case, Plaintiff sued GoDaddy.com, the service provider that hosted

the texxxan.com websites on which the photographs at issue here were allegedly posted. Am. Cplt. ¶ 5. Plaintiff alleged a variety of torts, including the same invasion of privacy claim asserted here. *GoDaddy*, 429 S.W.3d at 753. The Court of Appeals held that GoDaddy was protected against all those claims: "Allowing plaintiffs to assert any cause of action against GoDaddy for publishing content created by a third party, or for refusing to remove content created by a third party would be squarely inconsistent with section 230." *Id*. at 758. The court expressly rejected Plaintiff's effort to avoid CDA immunity by couching her claims as "as state law intentional torts" (*id*. at 759) and by claiming that the material at issue was unlawful or unprotected by the First Amendment (*id*. at 759-61).

The same result is warranted in this case. Plaintiff's claim against Google meets all three of the requirements for CDA protection. *First*, as numerous courts have held, Google provides an "interactive computer service"—defined as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server" (47 U.S.C. § 230(f)(2)). *See, e.g., Jurin v. Google Inc.*, 695 F. Supp. 2d 1117, 1122-23 (E.D. Cal. 2010) (Google's search engine is an "interactive computer service"); *Goddard v. Google Inc.*, No. C 08-2738 JF (PVT), 2008 U.S. Dist. LEXIS 101890, at *6 & n.2 (N.D. Cal. Dec. 17, 2008) ("a number of courts have already determined that Google is an interactive computer service provider").

*Second*, Plaintiff is unquestionably seeking to treat Google as the "publisher or speaker" of the photographs at issue. *See, e.g.*, Am. Cplt. ¶ 6 (alleging that "the use, posting or publication of the copyrighted images were all contrary to federal law"); ¶ 12 (referring to "Defendants' publication of [Plaintiff's] copyrighted, intimate images").

*Third*, the photographs were provided by another information content provider. Plaintiff seeks to hold Google liable because it "host[s] or make[s]

13

accessible through its search/images function" those photographs. *Id.* ¶ 6. She does not (and could not) allege that Google created the photographs or put them on the Internet. Google simply helps Internet users find the material they are looking for on other websites. That is precisely what the CDA protects, and courts have repeatedly applied the statute to bar similar claims against search engines. *See, e.g., Parker*, 422 F. Supp. 2d at 501 (explaining that "Google either archived, cached, or simply provided access to content that was created by a third party" and that "§ 230 was intended to provide immunity for service providers like Google on exactly the claims Plaintiff raises here"); *Mmubango v. Google Inc.*, C.A. No. 12-1300, 2013 U.S. Dist. LEXIS 24989, at *7 (E.D. Pa. Feb. 22, 2013) ("Because the plaintiff seeks to impose liability for Google's actions involving information provided by another information content provider, Section 230(c) applies to his claims.").[4]

In short, the CDA bars any effort by Plaintiff to proceed against Google based on an invasion of privacy theory.

## CONCLUSION

Plaintiff cannot allege that Google does anything more than operate a search engine that allows users to find material on the Internet. The law is clear that search engines are not subject to liability for copyright infringement or invasion of privacy based on material found on third-party websites. If Plaintiff's real dispute is with defendant MyEx, she may have a case, but her claims against Google should be dismissed with prejudice.

---

[4] *See also, e.g., Stayart v. Yahoo! Inc.*, 651 F. Supp. 2d 873, 885 (E.D. Wis. 2009) ("Yahoo!'s search results include abstracts, or snippets, that contain multiple samples of text appearing in various places on the third-party websites. Yahoo! does not create this content, it only displays the content in response to a C-user's search results."), *aff'd*, 623 F.3d 436 (7th Cir. 2010); *Murawski v. Pataki*, 514 F. Supp. 2d 577, 591 (S.D.N.Y. 2007) ("Ask.com cannot be held liable for any statements made on http://Politics1.com, including information that appears as a result of a search query of plaintiffs name.").

Dated: August 5, 2014	Respectfully submitted,

/s/ *Maura L. Rees*
Maura L. Rees, *Pro Hac Vice*
Brian M. Willen, *Pro Hac Vice*
WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
650 Page Mill Road
Palo Alto, California 94304
(650) 493-9300
mrees@wsgr.com
bwillen@wsgr.com

J. Thad Heartfield
Texas Bar No. 09346800
THE HEARTFIELD LAW FIRM
2195 Dowlen Road
Beaumont, Texas 77706
(409) 866-3318
thad@heartfieldlawfirm.com

*Counsel for Defendant Google Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing is being served on all counsel of record who have consented to electronic service via the Court's CM/ECF electronic filing system on this, the 5th day of August, 2014. All other counsel of record will be served with a true and correct copy via first class mail.

                                                   /s/ *J. Thad Heartfield*
                                                   J. Thad Heartfield